# 99 DTA 130

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL V DE PONCE Y AIBONITO
PANEL SUBSTITUTO II**

CESAR J. ALMODOVAR MARCHANY, SECRETARIO DEL TRABAJO Y RECURSOS HUMANOS DE
PUERTO RICO, EN REPRESENTACION DE
YOLANDA COLLAZO TORRES
Apelado

v.

MR. SPECIAL SUPERMARKETS, INC.
Apelante

Núm. KLAN-98-00769

San Juan, Puerto Rico, a 23 de marzo de 1999

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Pesante Martínez

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

### I

La parte apelante, Mr. Special, Inc. *("Mr. Special"),* recurre de una sentencia emitida el 13 de abril de 1998 por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Orocovis, declarando con lugar una querella por despido injustificado presentada contra la apelante por la apelada, Yolanda Collazo Torres, representada por el Secretario del Departamento del Trabajo y Recursos Humanos de Puerto Rico, al amparo de la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. secs. 185a y ss., y la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. secs. 3118 y ss. El Tribunal condenó a Mr. Special a pagar a la apelada la suma de $1,957.55 por concepto de mesada.

Confirmamos.

### II

Según se desprende del expediente, la apelante Mr. Special es una corporación dedicada a la operación de una cadena de supermercados. Entre otros lugares, opera una tienda en el Municipio de Orocovis.

La apelada Yolanda Collazo Torres trabajó en dicha tienda como empleada de Mr. Special desde el 10 de abril de 1991 hasta el 8 de junio de 1995. Durante el tiempo que trabajó con Mr. Special, la apelada ocupó varias posiciones, desde cajera, encargada del *"front end",* hasta que fue ascendida a la posición de sub-gerente, posición que ocupaba al momento de terminar sus servicios. En ese momento ganaba un salario de $235.00 semanales.

La razón para la terminación de los servicios de la apelada estuvo retacionada con una visita de supervisión a la tienda llevada a cabo el 23 de mayo de 1995 por el Sr. Saturnino Ramos Medina, supervisor del Departamento de Provisiones *("Groceries")* de Mr. Special y otros funcionarios de la apelante. Ese día, al llegar a la tienda a las 11:00 a.m., el Sr. Ramos encontró que no había presente ningún gerente y que la oficina estaba vacía. En ese momento, el turno le correspondía a la apelada, quien había salido a almorzar y quien regresó a las 12:00 m.d.

El Sr. Ramos también encontró varias deficiencias en la tienda en torno a mercancía expirada, mal rotulada u organizada. Procedió a emitir un informe a sus superiores al día siguiente, 24 de mayo de 1995.

El informe fue recibido por el Sr. Santos Alonso Cintrón, Gerente de Operaciones de la apelante, quien lo discutió con el Sr. Víctor Aponte, gerente de la tienda de Orocovis. En ese momento, la apelada estaba de vacaciones. Según su testimonio, en vista de los hallazgos del Sr. Ramos, el Sr. Alonso instruyó al Sr. Aponte que tan pronto la apelada llegara de sus vacaciones le informara que estaba suspendida y que sería referida a la oficina para investigar el caso y ver qué había sucedido.

La apelada regresó de sus vacaciones el día 8 de junio de 1995. Ese día, el Sr. Aponte le informó que estaba suspendida y le instruyó que entregara las llaves de la tienda y la tarjeta de ponchar. Cuando la apelada preguntó por las razones de su suspensión, el Sr. Aponte le explicó que seguía las instrucciones del Sr. Santos Alonso. La apelada insistió entonces que deseaba hablar con el Sr. Alonso, quien compareció a la tienda por la tarde.

El Sr. Alonso le confirmó a la apelada que había ordenado su suspensión *"hasta nuevo aviso"* para fines de investigación y le instruyó que debía reportarse a la oficina de Reynaldo Alonso, Jr., Director de Recursos Humanos de la empresa. De acuerdo a su testimonio, el Sr. Santos Alonso admitió que a la apelada no se le dijo cuándo habría de terminar su suspensión, lo cual dependía de la investigación.

La apelada, quien estaba *"nerviosa y fuera de tono"*, manifestó que entendía que la estaban despidiendo y le solicitó al Sr. Santos Alonso que preparara una comunicación por escrito, indicando las razones para la determinación de la empresa. El Sr. Santos Alonso replicó que ello correspondía al Sr. Reynaldo Alonso, pero la apelada indicó que no abandonaría la tienda si no se le ofrecía una comunicación por escrito. En vista de ello, el Sr. Santos Alonso redactó la siguiente carta:

*"A quien pueda interesar: En el día de hoy se le notifica a la Sra. Yolanda Collazo que será retirada de su posición de sub-gerente en la tienda de Orocovis hasta nuevo aviso. La señora Collazo deberá concertar una cita para poder hablar sobre los detalles de su separación con el Gerente de Personal, Sr. "Reynaldito" Alonso, Jr."*

El Sr. Santos Alonso le entregó la carta a la apelada. La apelada no se comunicó con el Sr. Reynaldo Alonso. Según el testimonio de este último, la determinación de suspender a la apelada no fue tomada siguiendo el procedimiento establecido por las Normas de Conducta de Mr. Special. Dicha decisión le correspondía al Sr. Reynaldo Alonso como Director de Recursos Humanos. Las normas requerían que se notificara al empleado por escrito de la suspensión, indicando su nombre, fecha, hora y lugar de la ofensa y una breve relación de los hechos. Se debía expresar, además, cuál era la regla violada y en qué consistía la violación, las fechas de comienzo y terminación de la suspensión, el nombre del supervisor inmediato y del Director de Recursos Humanos. Se requería que el original de la comunicación se entregara al empleado para su firma, que fuese discutido con éste y que se colocara en su expediente de personal.

En el caso de la apelada, dicho procedimiento no fue seguido, lo que fue admitido por los testigos de la parte apelante. Más aún, tampoco existe controversia que, conforme a lo manifestado a la apelada, la suspensión no era por un tiempo determinado.

Así las cosas, el Sr. Reynaldo Alonso se comunicó por la vía telefónica con la apelada el 13 de junio de 1995. Esta le manifestó que entendía que había sido despedida por el Sr. Santos Alonso. El Sr. Reynaldo Alonso le dijo que *"no hiciera caso a eso, que ella no estaba despedida, que volviese a su trabajo y allí se*

*reunirían para hablar sobre su suspensión."*

El 22 de junio de 1995, el Sr. Reynaldo Alonso envió la siguiente comunicación a la apelada:

*"Deseo por este medio confirmar, según nuestra conversación del pasado martes 13 de junio de 1995, su reincorporación a su trabajo habitual como sub-gerente de nuestra sucursal de Orocovis."*

La Apelada no regresó a trabajar. En su lugar, el 11 de julio de 1995 suscribió la siguiente comunicación al Sr. Reynaldo Alonso:

*"Deseo por este medio dar contestación a su carta certificada del día 22 de junio de 1995, la cual no entiendo, ya que usted y yo no llegamos a ningún acuerdo el día 13 de junio cuando hablamos por teléfono.*

*Yo insisto en que necesito saber las razones que tuvo el Sr. Santos Alonso, Jr., gerente de operaciones, para despedirme injustamente el día 8 de junio cuando regresé de mis vacaciones, ordenando al Sr. Víctor Aponte, Gerente, quitarme la tarjeta de empleados (sin dejarme ponchar) y las llaves de la tienda.*

*Dicha acción del Sr. Santos Alonso Jr. me tomó por sorpresa ocasionándome serias angustias e inconvenientes por los cuales estoy recibiendo tratamiento médico.*

*Su decisión de reincorporarme al trabajo la interpreto como si quisieran subsanar el grave error e injusticia cometida aún sin darme las razones. De tener alguna duda debe usted comunicarse con mi persona."*

Posteriormente, la apelada instó la presente querella por despido injustificado al amparo de la Ley Núm. 80, *supra*, alegando que había sido despedida sin justa causa. La apelada se acogió al procedimiento sumario establecido por la Ley Núm. 2, *supra*.

La parte apelante contestó la querella, negando las alegaciones y levantando varias defensas. En particular, planteó que la apelada no había sido despedida, sino suspendida y que ella misma había tomado la decisión de no retornar a su trabajo, renunciando al mismo, a pesar de que se le había indicado que su plaza estaba disponible y que debía reintegrarse a la misma.

Luego de otros incidentes, se celebró la vista en su fondo. El Tribunal requirió a la parte apelante desfilar su prueba primero, a pesar de que dicha parte había negado la existencia del despido.

Por la parte apelante testificaron los Sres. Saturnino Ramos, Santos Alonso Cintrón, Reynaldo Alonso Piñeiro. Por su parte, la apelada testificó a su favor y presentó el testimonio del Sr. Víctor Aponte. Las partes presentaron, además, varios documentos.

A base de la prueba desfilada, el 13 de abril de 1998, el Tribunal de Primera Instancia emitió la sentencia apelada, declarando con lugar la querella.

En su sentencia, el Tribunal rechazó la contención de la apelante de que la apelada había renunciado voluntariamente a su trabajo, luego de haber sido invitada a reintegrarse al mismo. El Tribunal observó que la suspensión de la apelada había sido por término indefinido lo que, según el Art. 5 de la Ley Núm. 80, 29 L.P.R. A. sec. 185e, equivalía a un despido. La Sala recurrida señaló, además, que la suspensión tampoco había cumplido con el procedimiento establecido por las Normas de Conducta de la compañía, expresando:

*"No tenemos la más mínima duda de que lo que ocurrió en el caso ante nuestra consideración, fue un despido y no una suspensión y le damos entera credibilidad al testimonio vertido por la parte querellante y a la aceptación y reconocimiento asumido por la parte querellada por sus actuaciones."*

El Tribunal consideró que la apelante no había intentado establecer la existencia de justa causa para el despido, descansando más bien en su contención de que el mismo no había ocurrido. Indicó:

*"En el caso ante nos evidentemente no existió justa causa para el despido de la querellante Yolanda Collazo. La parte querellada no demostró con el peso de la prueba que la parte querellante incurrió en un patrón reiterado de violación a las reglas de conducta de la empresa querellada, tampoco quedó establecido que su trabajo fuera tan deficiente que afectara adversamente a la empresa querellada. La querellante se desempeñó como una buena empleada que incluso fue ascendida y escaló posiciones durante los cuatro años que laboró para la parte querellada.*

*La parte querellante fue despedida de su empleo y sueldo sin que efectivamente existiese justa causa para el despido y por tal razón la parte querellada quiso justificarlo y disfrazarlo detrás de una alegada suspensión."*

El Tribunal condenó a la apelante a pagar a la apelada la suma de $1,957.55 por concepto de mesada.

La parte apelante solicitó determinaciones adicionales de hecho, solicitud que fue denegada por el Tribunal. Insatisfecha, la apelante compareció entonces ante este foro.

### III

En su recurso, la apelante plantea que erró el Tribunal de Primera Instancia al determinar que la apelada fue despedida de su empleo y al resolver que el patrono tenía la obligación de justificar el mismo y desfilar su prueba primero, a pesar de que existía una controversia *bona fide* sobre la existencia del despido.

La Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185(a) y ss. (Supl. 1998), confiere a todo empleado contratado sin tiempo determinado, que fuere despedido sin justa causa, el derecho a recibir de su patrono, en adición al sueldo que hubiera devengado, una indemnización correspondiente a un mes de sueldo y una indemnización progresiva adicional equivalente a una semana por cada año de servicio. 29 L.P. R.A. sec. 185a (Supl. 1998).

El Art. 5 de la Ley define despido como la cesantía del empleado, así como *"su suspensión indefinida o por un término que exceda de tres (3) meses, excepto en el caso de empleados de industria y negocios estacionales"*, o la renuncia del empleo motivada por actuaciones del patrono dirigidas a forzar al empleado a renunciar, *"tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra"*. 29 L.P.R.A. sec. 185e; *Segarra Hernández v. Royal Bank de Puerto Rico*, ___ D.P.R. ___ (1998), **98 J.T.S 37**, a la pág. 750; *Arthur Young & Company v. Virgilio Vega III*, ___ D.P.R. ___ (1994), **94 J.T.S. 75**, a la pág. 11972; *Vélez de Reilova v. Palmer Bros., Inc.*, 94 D.P.R. 175, 179 (1967).

No existe, sin embargo, una prohibición absoluta contra el despido de un empleado. Si existe justa causa, éste puede ser despedido. *Santiago v. Kodak Caribbean, Ltd.*, 129 D.P.R. 763, 775 (1992).

El Art. 2 de la Ley expone las circunstancias o actos que pueden justificar el despido de un empleado. 29 L. P.R.A. sec. 185b. Entre éstas se incluye que el obrero siga un patrón de conducta impropia o desordenada y la violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento

del establecimiento siempre que copia escrita de los mismos hubiese sido suministrada oportunamente al empleado.

La Ley 80 no favorece el despido como sanción a la primera falta. No obstante, no se excluye esta posibilidad cuando por su gravedad y su potencial de agravio se pone en riesgo el orden, la seguridad o la eficiencia que constituyen el funcionamiento normal del establecimiento. *Delgado Zayas v. Hospital Interamericano de Medicina Avanzada,* \_\_\_ D.P.R. \_\_\_ (1994), **94 J.T.S. 149**, a la pág. 500; *Secretario del Trabajo v. I.T.T.,* 108 D.P.R. 541, 542-543 (1979).

El Tribunal Supremo de Puerto Rico ha aclarado que para que violaciones a las normas de trabajo constituyan justa causa para el despido, el patrono tiene que establecer: (1) la razonabilidad de las normas establecidas para el funcionamiento del establecimiento, (2) que le suministró una copia escrita de éstas al empleado y (3) que el empleado las violó en reiteradas ocasiones. *Santiago v. Kodak Caribbean, Ltd.,* 129 D.P.R. a las págs. 775-776; *Rivera Aguila v. K-Mart de P.R.,* 123 D.P.R. 610, 613-614 (1989); *Srio. del Trabajo v. I.T.T.,* 108 D.P.R. a la pág. 542.

La Ley establece una presunción de que el despido del empleado fue injustificado, correspondiendo al patrono rebatir la misma mediante preponderancia de la evidencia. 29 L.P.R.A. sec 185h; véanse, además, *Belk v. Martínez,* \_\_\_ D.P.R. \_\_\_ (1998), **98 J.T.S. 92,** a la pág. 1315; *Delgado Zayas v. Hospital Interamericano de Medicina Avanzada,* **94 J.T.S. 149,** a la pág. 500; *Casto Soto v. Hotel Caribe Hilton,* \_\_\_ D.P.R. \_\_\_ (1994)**, 94 J.T.S. 128**, a la pág. 312; *Rivera Aguila v. K-Mart de P.R., 123 D.P.R. a la pág. 610; Báez García v. Cooper Labs., Inc.,* 120 D.P.R. 145, 152 (1987).

En la situación de autos, no existe controversia que el 8 de junio de 1995 la parte apelada fue sometida a una suspensión de sus funciones. Dicha suspensión, conforme el testimonio de todas las partes, no fue por un tiempo determinado sino indefinida. El Tribunal de Primera Instancia determinó, además, que al notificar la misma a la apelada, la parte apelante había incumplido con el procedimiento requerido por sus Normas de Conducta. En estas circunstancias, coincidimos con la distinguida Sala recurrida en que dicha actuación debía ser considerada como un despido, conforme al texto expreso del Art. 5 de la Ley Núm. 80. 29 L.P.R.A. sec. 185e. *Santiago v. Kodak Caribbean, Ltd.,* 129 D.P.R. a las págs. 775-776; *Rivera Aguila v. K-Mart de P.R.,* 123 D.P.R. a las págs. 613-614; *Srio. del Trabajo v. I.T.T.,* 108 D.P.R., a la pág. 542.

La apelante alega, sin embargo, que la apelada no fue despedida porque posterior al 8 de junio de 1995 el Sr. Reynaldo Alonso le requirió que se reintegrase a su trabajo, aclarándole que Mr. Special no la había terminado.

Lo cierto es que, independientemente de que los oficiales de la apelante hubieran efectivamente abrigado la intención de despedir a la apelada el 8 de junio de 1995, la Ley Núm. 80 define la suspensión por tiempo indefinido de un empleado como un *"despido"*. La política adoptada por la Asamblea Legislativa en cuanto a este tipo de situaciones es que la permanencia en su posición de un empleado no puede ser materia de incertidumbre ni quedar al arbitrio de su patrono. Para no ser considerada como un despido, toda suspensión de un empleado tiene que ser por un tiempo definido que no exceda de tres (3) meses.

Toda vez que, según hemos indicado, en la situación de autos, la suspensión de la apelada no cumplía con lo anterior, la misma, constituia un despido, el cual tuvo efecto el mismo día en que le fue notificado a la apelada, 8 de junio de 1995.

La Ley guarda silencio en torno a si, una vez ocurrido un despido, un patrono puede escapar la penalidad impuesta por el estatuto recantando dicha decisión y requiriendo al empleado reintegrarse a su tarea. Dicha

situación parecería contraria en muchos casos al texto expreso del Art. 5 de la Ley. Por ejemplo, si un empleado ha permanecido suspendido por más de tres meses, el mismo ha sufrido un despido, dentro del contexto de la Ley. En tal eventualidad, no creemos que el patrono pudiera deshacer lo actuado y derrotar la causa de acción del empleado bajo la oportunidad de regresar a su plaza. Debe mantenerse en mente que la Ley Núm. 80 es un estatuto de carácter reparador que debe ser interpretado liberalmente a favor de los derechos del trabajador. *Belk v. Martínez,* **98 J.T.S. 92,** a la pág. 1315; *Dorante v. Wrangler of P.R.* \_\_\_ D.P.R. \_\_\_ (1998), **98 J.T.S. 49,** a la pág. 858. En cualquier caso, la prueba sobre este asunto resultaba conflictiva, por cuanto la apelada negó que hubiera llegado a ningún acuerdo para reintegrarse a trabajar bajo las circunstancias. Luego de evaluar los testimonios presentados, el Tribunal de Primera Instancia rechazó la contención de la apelante y determinó que la apelada había sido despedida.

La norma en nuestra jurisdicción es que un tribunal apelativo no habrá de intervenir con la apreciación de la prueba llevada a cabo por el Tribunal de Primera Instancia en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Véanse *Huertas Alicea v. Compañía de Fomento Recreativo,* \_\_\_ D.P.R. \_\_\_ (1998), **98 J.T.S. 144,** a la pág. 262; *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe,* \_\_\_ D.P.R. \_\_\_ (1998), **98 J.T.S. 101,** a la pág. 1,477; *Sepúlveda Rivas v. Departamento de Salud,* \_\_\_ D.P.R. \_\_\_ (1998), **98 J.T.S. 59,** a la pág. 949; *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172, 181 (1985); *Pérez v. Hospital La Concepción,* 115 D.P.R. 721, 728 (1984); véase, además, 32 L.P.R.A. Ap. III, R. 43.2.

En la situación de autos, no detectamos base para intervenir con la determinación del Tribunal de Primera Instancia.

En vista de lo anterior, tampoco entendemos que hubiera errado el Tribunal al imponer a la apelante el peso de justificar el despido, 29 L.P.R.A. sec 185h; véanse, además, *Belk v. Martínez,* **98 J.T.S. 92,** a la pág. 1315; *Delgado Zayas v. Hospital Interamericano de Medicina Avanzada,* **94 J.T.S. 149,** a la pág. 500; o al concluir que la apelante no había descargado dicho peso. *Delgado Zayas v. Hospital Interamericano de Medicina Avanzada,* **94 J.T.S. 149,** a la pág. 500; *Secretario del Trabajo v. I.T.T.,* 108 D.P.R. a las págs. 542-543.

La apelante no logró establecer que el despido de la apelada hubiera sido necesario para proteger la buena marcha del negocio. Cualesquiera que hubieran sido las fallas detectadas en el desempeño de la apelante durante la visita del 23 de mayo de 1995, no está claro que las mismas hubieran formado parte de un patrón reiterado de conducta o hubieran sido de tal magnitud que hubieran justificado el despido de la apelada.

Por los fundamentos expresados, se confirma la sentencia.

Lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General