# 2002 DTA 89

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL V DE PONCE Y AIBONITO**

JORGE L. DAVID ORTIZ
Apelado

v.

INDUSTRIAS AVICOLAS DE PUERTO RICO, INC., h/n/c EMPRESAS PICU
Apelante

Núm. KLAN-01-00502

San Juan, Puerto Rico, a 22 de abril de 2002

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Jiménez y la Jueza Pabón Charneco

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

La corporación apelante, Industrias Avícolas de Puerto Rico, Inc., conocida como *"Empresas Picú"*, solicita la revisión de una sentencia emitida el 6 de abril de 2001 por el Tribunal de Primera Instancia, Sala Superior de Aibonito, que declaró con lugar la demanda sobre despido injustificado y discrimen por razón de edad presentada contra la parte apelante por el apelado, Jorge David Ortiz. El Tribunal condenó a la apelante a satisfacer al apelado la suma de $102,258.36, más las costas del litigio y $12,000.00 en concepto de honorarios de abogado.

Revocamos parcialmente la sentencia apelada.

### II

Según se desprende del récord, Empresas Picú es una corporación dedicada a la cría y venta de pollos para consumo. Tiene sus oficinas y lugar de operaciones en Coamo, Puerto Rico.

Entre otras facilidades, Empresas Picú mantiene una *"Tiendita"* donde se venden productos de la empresa al detal, al público en general.

El apelado fue empleado regular de Empresas Picú. Trabajó desde el 6 de julio de 1979 hasta el 13 de abril de 1996.

El apelado trabajaba la *"Tiendita"*. Comenzó realizando funciones de facturación. Luego fue ascendido al puesto de asistente de supervisor. En esta capacidad, sustituia al supervisor, realizaba funciones de cajero, despachaba mercancía, la recibía y la colocaba en la nevera y hacía trabajo de limpieza. Devengaba un salario de $918.66 mensuales. Para la fecha de los hechos, el apelado tenía 53 años de edad.

Para esta época, el supervisor del apelado en la *"Tiendita"* lo era el Sr. Héctor Rivera. El apelado se quedaba a cargo de la Tiendita cuando el Sr. Rivera estaba de vacaciones. No obstante, de acuerdo a su testimonio, el apelado nunca cuadraba las cajas registradoras.

Además del apelante y el Sr. Rivera, había otro empleado en la Tiendita.

En octubre de 1995, la mayoría de las acciones de Empresas Picú fue adquirida por un grupo de inversionistas, que incluia a dos fundadores de la compañía. El Sr. Julio E. Torres, quien hasta ese momento había sido vice-presidente de la Junta de Directores de la corporación, se convirtió en presidente de ese cuerpo.

Como resultado de este cambio de administración, se comenzó una revisión de los controles internos de la compañía con el asesoramiento de una firma de contables, Alvarez & Torres. Existía, entre otros particulares, preocupación con el manejo de fondos en la Tiendita.

El 24 de enero de 1996, el personal de la firma Alvarez y Torres llevó a cabo una auditoría sorpresa en la Tiendita. En ese momento, el apelado estaba a cargo de la misma. Los auditores encontraron que faltaban $81.50 de *"petty cash"*. Más aún, la cantidad de dinero depositado en la caja registradora arrojaba un déficit de sobre $700. Había una nota del Sr. Rivera en la caja, que contenía unas cifras, pero el apelado no sabía lo que quería decir.

Al examinar los récords de ventas de otros seis días escogidos al azar, los auditores detectaron un déficit de sobre $6,000 con respecto a las ventas informadas.

El 14 de febrero de 1996, se realizó una nueva auditoría sorpresa en la Tiendita. En esa fecha, el apelado también estaba a cargo. En esa ocasión, la inspección reflejó que faltaban casi $600 en la caja y que faltaban $281 de petty cash.

Como resultado de estos hallazgos, la empresa despidió al Sr. Rivera. La Empresa decidió nombrar como supervisora en la Tiendita a la Sra. María Santiago, quien no tenía experiencia previa, pero quien tenía estudios universitarios con concentración en contabilidad. La Sra. Santiago gozaba, además, de la confianza de la gerencia de Empresas Picú.

El apelado entrenó a la Sra. Santigo en sus funciones y le enseñó a cuadrar la caja registradora.

El apelado no fue despedido, pero se le amonestó mediante una carta y se le sustituyó en su posición de asistente del supervisor. Esta posición fue asignada a la Sra. Carmen Sánchez, quien fue traída de otra posición en la compañía para hacerse cargo de la misma. La Sra. Sánchez no tenía experiencia en la Tiendita y llevaba menos tiempo en la empresa que el apelado. El apelado no fue considerado para sustituir al Sr. Rivera, a pesar de que él tenía más antigüedad.

El apelado, en efecto, fue degradado dentro de la jerarquía de Empresas Picú y privado de sus funciones. La compañía le imputaba complicidad en el patrón de desfalco existente en la Tiendita bajo el Sr. Rivera, a pesar de que Empresas Picú carecía de evidencia para imputar al apelado infracción específica alguna.

El sentir de la compañía le fue transmitido al apelado por la Sra. Santiago. Esta le decía que *"yo vine a cuidar los chavos de Julio Eduardo"*, refiriéndose al señor Torres, presidente de la Junta de Accionistas y *"aquí no queremos viejos"*, implicando que las irregularidades se debían a la incapacidad del apelado, por su edad.

El apelado, naturalmente, se sintió humillado y hostigado por la situación. Se quejó al Sr. Fernando Miller, gerente de la empresa a cargo de las decisiones sobre personal, pero éste no atendió sus reclamos.

El 13 de abril de 1996, el Sr. David recibió un memorando del Sr. Fernando Miller ordenándole reportarse al Departamento de Recursos Humanos. Según la prueba desfilada en el juicio, el propósito de dicho memorando era para notificarle al apelado que lo iban a enviar a la línea de empaque en la empresa, lo que, en efecto, equivalía a otro descenso, ya que no existía vacante alguna para una plaza de asistente de supervisor en dicha área.

El apelado se sintió nervioso y afectado porque anticipó que lo iban a despedir. Esto era consistente con la actitud de la empresa de culparlo a él por las irregularidades en la Tiendita y marginarlo de sus funciones.

El apelado decidió reportarse al Fondo del Seguro del Estado, alegando que había sufrido una lesión en la espalda y que había desarrollado una condición emocional.

El apelado fue finalmente dado de alta por el Fondo en abril de 1997, pero no regresó a trabajar.

En vista de esta situación, el 14 de junio de 1997, fue notificado por Empresas Picú que se estaba retirando su

nombre de la nómina de la compañía.

El apelado instó entonces la presente acción ante el Tribunal de Primera Instancia por despido injustificado y discrimen por edad bajo la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. secs. 185a y ss., la Ley Núm. 100 de 30 de junio de 1956, 29 L.P.R.A. secs. 146 y ss, y la *Age Discrimination in Employment Act* ("*A.D.E.A.*"), 29 U.S. C. secs. 621 y ss.

Alegó que su descenso de funciones en febrero de 1996 había constituido un despido constructivo. El apelado solicitó acogerse al trámite sumario establecido por la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 y ss.

Empresas Picú contestó la querella, negando las alegaciones. Alegó, entre otras cosas, que no había despedido al apelado, sino que éste se había rehusado reintegrarse a su empleo, luego de haber sido dado de alta del Fondo.

Luego de otros trámites, el Tribunal celebró la vista en su fondo. Las partes tuvieron la oportunidad de presentar prueba testifical y documental en apoyo de sus respectivas alegaciones.

A base de la prueba presentada, el 6 de abril de 2001, el Tribunal de Primera Instancia emitió la sentencia apelada, declarando con lugar la demanda.

En su sentencia, el Tribunal de Primera Instancia determinó que el apelado efectivamente había sido objeto de un despido constructivo al ser privado de sus funciones en la Tiendita de Empresas Picú. Razonó el Tribunal:

*"Ante esta situación, la querellada tenía el peso de la prueba de demostrar que no hubo discrimen en el despido. La querellada, sin duda, omitió presentar prueba para derrotar dicha presunción. El Sr. David, de otra parte, no sólo descansó en la presunción de discrimen, sino que probó, además, que en medio del despojo de sus funciones y el descenso de puesto, fue objeto de constantes burlas y humillaciones en torno a su edad por parte de su supervisora y jefa inmediata, quien le decía "aquí no queremos viejos". Por lo tanto, el Tribunal concluye que, como cuestión de hecho y de derecho, el despido del Sr. David fue discriminatorio."*

El Tribunal determinó que el apelado había sufrido daños económicos y emocionales. Entendió que había sufrido daños de $72,258.36, de los cuales $42,258.36 correspondían a salarios dejados de percibir y $30,000.00 por concepto de angustias mentales y emocionales. El Tribunal impuso doble penalidad a Empresas Picú sobre esta última cantidad, para una compensación total de $102,258.36. También le impuso a la apelante una partida de $12,000.00, por concepto de honorarios de abogado.

Insatisfecha, Empresas Picú acudió ante este Tribunal.

### III

En su recurso, Empresas Picú levanta la comisión de varios errores, dirigidos a cuestionar las determinaciones del Tribunal y su imposición de responsabilidad a la apelante.

Empresas Picú plantea que el Tribunal erró al determinar que había despedido al apelado. Alega que éste se rehusó a regresar a su empleo luego de haber sido dado de alta del Fondo del Seguro del Estado.

El Art. 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo requiere a todo patrono reservar el empleo a un obrero que se hubiera acogido a los beneficios de dicho estatuto y estuviera recibiendo tratamiento en el Fondo del Seguro del Estado por un período de doce (12) meses desde la fecha de la ocurrencia del accidente. 11 L.P.R.A. sec. 7; *Santos Berríos v. Lederle Piperacillin, Inc.*, ___ D.P.R. ___ (2001) , **2001 J.T.S. 55**, a la pág. 1,121; *García Díaz v. Darex Puerto Rico, Inc.*, ___ D.P.R. ___ (1999), **99 J.T.S. 84**, a la pág. 1.055; *Torres v. Star Kist*

*Caribe, Inc.,* 134 D.P.R. 1024, 1032-3 (1994); *Santiago v. Kodak Caribbean, Ltd.,* 129 D.P.R. 763, 770-771 (1992).

El empleado puede ser despedido si, al expirar el plazo mencionado, no ha solicitado la reposición a su empleo. *Alvira v. SK & F Laboratories Co.,* 142 D.P.R. 803, 814 (1997); *Torres v. Star Kist Caribe, Inc.,* 134 D.P.R. a las págs. 1032-3; *Carrión Lamoutte v. Compañía de Turismo,* 130 D.P.R. 70, 78 (1992). Pero, de ordinario, no puede ser terminado antes de la expiración del mismo. La infracción a dicho precepto da lugar a una causa de acción por daños y perjuicios. 11 L.P.R.A. sec. 7; *García Díaz v. Darex Puerto Rico, Inc.,* **99 J.T.S. 84,** a la pág. 1,057; *Santiago v. Kodak Caribbean, Ltd.,* 129 D.P.R. a las págs. 770-771.

El Tribunal Supremo de Puerto Rico ha resuelto, sin embargo, que esta prohibición no es absoluta. Un patrono puede despedir a un empleado dentro del período de reserva, cuando existe una causa justificada independiente para hacerlo, no relacionada con la lesión del empleado. *García Díaz v. Darex Puerto Rico, Inc.,* **99 J.T.S. 84,** a las págs. 1,057-8; *Santiago v. Kodak Caribbean, Ltd.,* 129 D.P.R. a la pág. 770.

En la situación de autos, el apelado no solicitó la reposición en su empleo luego de haber transcurrido el mencionado período de reserva de doce (12) meses establecido por el Art. 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7. En visto de lo anterior, la apelante plantea que el apelado podía ser válidamente despedido.

El Tribunal de Primera Instancia, sin embargo, entendió que la conducta de Empresas Picú de privar al apelado de sus funciones había constituido un despido constructivo del apelado, lo que había tenido lugar previo a que éste se acogiera a los beneficios del Fondo del Seguro del Estado. El Tribunal entendió que este despido había sido injustificado, bajo la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. secs. 185a y ss., y que el mismo había constituido un discrimen por edad, contrario a la Ley Núm. 100 de 30 de junio de 1956, 29 L.P.R.A. secs. 146 y ss; y la A.D.E.A., 29 U.S.C. secs. 621 y ss.

La citada Ley Núm. 80, según enmendada, confiere a todo empleado contratado sin tiempo determinado, que fuere despedido sin justa causa, el derecho a recibir de su patrono, además del sueldo que hubiera devengado, una indemnización correspondiente de uno a tres meses de sueldo, dependiendo del número de años de servicio del empleado, y una indemnización progresiva adicional equivalente a una semana de sueldo por cada año de servicio. 29 L.P.R.A. sec. 185a (Supl. 2001); véase, *Díaz Fontánez v. Wyndham Hotel Corp.,* ___ D.P.R. ___ (2001), **2001 J. T.S. 146,** a la pág. 260; *Irizarry v. Johnson & Johnson Consumer Products Co.,* ___ D.P.R. ___ (2000), **2000 J.T.S. 27,** a la pág. 618.

El Art. 5 de la Ley define despido como la cesantía del empleado, su suspensión indefinida o por un término que exceda de tres (3) meses. Dicho precepto también contempla como un despido la renuncia del empleo motivada por las actuaciones del patrono dirigidas a forzarlo a renunciar. 29 L.P.R.A. sec. 185e. *Hernández v. Trans Oceanic Life Insurance Company,* ___ D.P.R. ___ (2000), **2000 J.T.S. 125,** a la pág. 1,563; *Segarra v. Royal Bank de Puerto Rico,* ___ D.P.R. ___ (1998), **98 J.T.S. 37,** a la pág. 750; *Vélez de Reilova v. Palmer Bros. Inc.,* 94 D.P.R. 175, 179 (1967).

No existe, sin embargo, una prohibición absoluta contra el despido de un empleado. Si existe justa causa, éste puede ser despedido. *Santiago v. Kodak Caribbean, Ltd.,* 129 D.P.R. 763, 775 (1992).

La Ley establece una presunción de que el despido del empleado fue injustificado, correspondiendo al patrono rebatir la misma mediante preponderancia de la evidencia. *Díaz Fontánez v. Wyndham Hotel Corp.,* ___ D.P.R. ___ (2001), **2001 J.T.S. 146,** a las págs. 261-262; *Belk Arce v. Martínez,* ___ D.P.R. ___ (1998), **98 J.T.S. 92,** a la pág. 1,315; *Delgado Zayas v. Hosp. Int. Med. Avanzada,* 137 D.P.R. 643, 650 (1994); *Soto v. Hotel Caribe Hilton,* 137 D. P.R. 294, 303-304 (1994); *Rivera Aguila v. K-Mart de P.R.,* 123 D.P.R. 599, 610 (1989), *Báez García v. Cooper Labs., Inc.,* 120 D.P.R. 145, 152 (1987).

El Art. 2 de la Ley dispone que existe justa causa para el despido cuando, *inter alia*, el obrero siga un patrón de conducta impropia o desordenada, no rinda su trabajo en forma eficiente o lo haga tardía y negligentemente o en violación de las normas de la empresa sobre la calidad del producto, incurra en una violación reiterada de las reglas y reglamentos para el funcionamiento del establecimiento, ocurra un cierre total, temporero o parcial de las operaciones del establecimiento, se haga necesario por los cambios tecnológicos o de reorganización de la empresa, así como los de estilo, diseño o de la naturaleza del producto que se produce o se maneja y los de servicios rendidos al público. 29 L.P.R.A. sec. 185b; véanse, *Hernández v. Trans Oceanic Life Insurance Company*, **2000 J.T.S. 125,** a la pág. 1,567; *García Díaz v. Darex Puerto Rico, Inc.*, **99 J.T.S. 84**, a la pág. 1,062; *Rivera Aguila v. K-Mart de P.R.*, 123 D.P.R. 599, 610 (1989); *Narváez v. The Chase Manhattan Bank*, 120 D.P.R. 731 (1988); *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536 (1979).

El estatuto también dispone que existe justa causa para despedir a un empleado cuando dicho despido es atribuible a *"[r]educciones en el empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias anticipadas o que prevalecen al ocurrir el despido",* 29 L.P.R.A. sec. 185b. Véase, *P.R. Cap. & Tires Sales v. Tribunal*, 68 D.P.R. 398 (1948). Finalmente, se dispone que:

*"No se considerará despido por justa causa aquél que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento."*

29 L.P.R.A. sec. 185b.

Las causas enumeradas en el precepto no son taxativas. El concepto de *"justa causa"*, bajo el estatuto, es dinámico y se nutre de múltiples y fluidas situaciones imposibles de prever. *Almodóvar Marchany v. GP Industries, Inc.*, ___ D.P.R. ___ (2001), **2001 J.T.S. 7**, a la pág. 756.

La Ley Núm. 80 no favorece el despido como sanción a la primera falta. No obstante, no se excluye esta posibilidad cuando por su gravedad y su potencial de agravio se pone en riesgo, el orden, la seguridad o la eficiencia que constituyen el funcionamiento normal del establecimiento. *Jusino Figueroa v. Walgreens of San Patricio, Inc.*, ___ D.P.R. ___ (2001), **2001 J.T.S. 154**, a las págs. 371-372; *Almodóvar Marchany v. GP Industries, Inc.*, **2001 J.T.S. 1**, a la pág. 757; *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 D.P.R. a la pág. 650; *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 541, 542-543 (1979).

El Tribunal Supremo de Puerto Rico ha aclarado que para que violaciones a las normas de trabajo constituyan justa causa para el despido, el patrono tiene que establecer: (1) la razonabilidad de las normas establecidas para el funcionamiento del establecimiento, (2) que le suministró copia escrita de éstas al empleado, y (3) que el empleado las violó en reiteradas ocasiones. *Jusino Figueroa v. Walgreens of San Patricio, Inc.*, **2001 J.T.S. 154**, a las págs. 371-372; *Rivera Aguila v. K-Mart de Puerto Rico*, 123 D.P.R. a las págs. 613-614; *Srio. del Trabajo v. I.T.T.*, 108 D.P.R., a la pág. 542.

No obstante, el principio rector es que la conducta esté vinculada a la ordenada marcha y normal funcionamiento de la empresa, y no en libre arbitrio o capricho del patrono. *Almodóvar Marchany v. GP Industries, Inc.*, **2001 J.T.S. 1**, a la pág. 757.

Por su parte, la Ley Núm. 100 de 30 de junio de 1959 establece una causa de acción por daños contra todo patrono *"que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su status como empleado"* por, entre otras, *"razón de edad"*. 29 L.P.R.A. sec. 146(Supl. 2001); véanse, *Piñero González v. Autoridad de Acueductos y Alcantarillados*, ___ D.P.R. ___ (1998), **98 J.T.S. 140**, a la pág. 215; *López Vicil v. I.T.T. Intermedia, Inc.*, 142 D.P.R. 857, 863 (1997); *Santini*

*Rivera v. Serv. Air, Inc.,* 137 D.P.R. 1, 4 (1994); *Odriozola v. S. Cosmetic Dist. Corp.,* 116 D.P.R. 485, 494 (1985).

El estatuto concede al empleado afectado una compensación igual al doble de los daños sufridos, así como el derecho a ser repuesto en su posición. 29 L.P.R.A. secs. 146 y 147a (Supl. 2001). *López Vicil v. I.T.T. Intermedia, Inc.,* 142 D.P.R. a las págs. 866-868; *García Pagán v. Shiley Caribbean, Etc.,* 122 D.P.R. 193, 209 (1988).

Bajo la Ley Núm. 100, se presume que el despido ha sido discriminatorio cuando ha sido efectuado sin justa causa, correspondiendo el peso al patrono para refutar dicha presunción. 29 L.P.R.A. sec. 148; *Díaz Fontánez v. Wyndham Hotel Corp.,* **2001 J.T.S. 146,** a las pág. 263; *Alberty Marrero v. Rodríguez Emma,* ___ D.P.R. ___ (1999), **99 J.T.S. 169,** a la pág. 336; *Ibañez v. Molinos de Puerto Rico,* 114 D.P.R. 42, 50-52 (1983).

El Tribunal Supremo de Puerto Rico ha advertido, sin embargo, que esta presunción no afecta la norma procesal de que el peso de la prueba inicial le corresponde a la parte demandante. Para beneficiarse de la presunción mencionada, dicha parte tiene que establecer: (1) que fue objeto de un despido, (2) que dicho despido fue injustificado, y (3) establecer algún hecho base que ubique la situación dentro de la modalidad de discrimen que se reclama. *Díaz Fontánez v. Wyndham Hotel Corp.,* **2001 J.T.S. 146,** a las págs. 265-6 *Hernández v. Transoceanic Life Insurance Company,* **2000 J.T.S. 125,** a la pág. 1,562.

Una vez un demandante ha cumplido con los requisitos enumerados, el peso para producir evidencia y para convencer al juzgador se transfiere al patrono, quien puede optar por atacar o destruir dicha presunción, ya bien demostrando que existía justa causa para el despido, demostrando que el mismo no obedeció a razones discriminatorias o ambas cosas. *Díaz Fontánez v. Wyndham Hotel Corp.,* **2001 J.T.S. 146,** a la pág. 266; *Báez García v. Cooper Labs, Inc.,* 120 D.P.R. 145, 155 (1987).

La ley federal A.D.E.A. también establece una causa de acción a favor de toda persona entre los 40 y 70 años de edad que hubiera sido despedida o rechazada de un empleo por motivo de edad. La misma confiere jurisdicción concurrente a los tribunales estatales, incluyendo al de Puerto Rico, para entender en casos de esta naturaleza. 29 U. S.C. secs. 626(c), 216(b); *López Vicil v. I.T.T. Intermedia, Inc.,* 142 D.P.R. a la pág. 863; *Ibánez v. Molinos de P.R., Inc.,* 114 D.P.R. a las págs. 46-47.

Bajo este precepto, la parte demandante puede establecer un caso *prima facie* de discrimen estableciendo los siguientes elementos: (1) que el demandante pertenece a la clase protegida (i.e., que tiene entre 40 y 70 años de edad); (2) que estaba cualificado para ocupar la posición, (3) que fue despedido, y (4) que fue sustituido por una persona mucho más joven. *López Vicil v. I.T.T. Intermedia, Inc.,* 142 D.P.R. a la pág. 863; *Ibánez v. Molinos de P.R., Inc.,* 114 D.P.R. a la págs. 47-48.

Establecidos dichos elementos, el peso se transfiere a la parte demandada para articular una razón no discriminatoria para el despido. *Id.*

En la situación de autos, según hemos visto, el Tribunal de Primera Istancia determinó que el apelado había sido objeto de un despido constructivo. En efecto, según se desprende del récord, el apelado fue privado de sus funciones como asistente del supervisor de la Tiendita y somedido a presiones por sus supervisores, debido a que la empresa lo culpaba por las irregularidades ocurridas. El día que el apelado decidió acudir al Fondo, la empresa se disponía a trasladarlo de sus funciones y a asignarle una plaza de menor jerarquía.

El Tribunal de Primera Instancia entendió, a base de estos hechos, que el apelado fue objeto de un despido constructivo, el que había tenido lugar con anterioridad a que transcurriera el término establecido por el art. 5a de la Ley de Compensaciones por Accidentes del Trabajo. Empresas Picú cuestiona dicha determinación.

No tenemos base, sin embargo, para intervenir con la determinación del foro recurrido sobre este particular. El

testimonio del apelado fue que él se sintió humillado y marginado ante la decisión de la corporación de no asignarle la posición de supervisor y de privarlo de sus tareas como asistente del supervisor. Al momento de acudir al Fondo, la compañía admite que se disponía a trasladar al apelado de su plaza y a asignarlo a la línea de empaque en una posición inferior a la que ocupaba.

No existe controversia esencial entre las partes, en este sentido, y así lo determinó el Tribunal, que Empresas Picú culpaba al apelado por las irregularidades ocurridas en la administración de la Tiendita previo a febrero de 1996, cuando el Sr. Rivera era el supervisor. Aunque Empresas Picú no tenía evidencia alguna para concluir, como tal, que el apelado hubiera incurrido en algún acto impropio, o que éste hubiera violado alguna norma de la compañía, sus supervisores habían perdido su confianza en él. Esta actitud le fue comunicada al apelado por las Sras. María Santiago y Carmen Sánchez, quienes fueron asignadas a trabajar en la Tiendita y quienes le indicaban al apelado que habían venido a *"proteger"* (presumiblemente, del apelado), el dinero del Sr. Julio Eduardo Torres y que no querían viejos en la Tiendita.

La norma en nuestra jurisdicción es que, de ordinario, los Tribunales apelativos no intervienen con la apreciación de la prueba realizada por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Véanse, *Colón González v. K-Mart,* 154 D.P.R. ___ (2001), **2001 J.T.S. 98,** a la pág. 1,484; *Orta v. Padilla,* 137 D.P.R. 927, 937 (1995); *Rodríguez Oyola v. Machado Díaz,* 136 D.P.R. 250, 258 (1994); *Coop. de Seguros Múltiples de P.R. v. Lugo,* 136 D.P.R. 203, 208 (1994).

En el caso de autos, no estimamos que el Tribunal de Primera Instancia hubiera errado al concluir que el apelado fue objeto de un despido constructivo, ante las presiones recibidas por dicho empleado a partir de febrero de 1996. *Hernández v. Trans Oceanic Life Insurance Company,* **2000 J.T.S. 125,** a la pág. 1,563; *Segarra v. Royal Bank de Puerto Rico,* **98 J.T.S. 37,** a la pág. 750; *Vélez de Reilova v. Palmer Bros. Inc.,* 94 D.P.R. a la pág. 179; 29 L.P.R.A. sec. 185e.

Tampoco entendemos que el foro de Primera Instancia hubiera errado al concluir que dicho despido fue injustificado. Lo cierto es que, según hemos visto, aunque Empresas Picú sospechaba de la lealtad del apelado, dicha entidad carecía de evidencia tangible para imputar a dicha parte infracción específica alguna a las normas de la empresa. *Jusino Figueroa v. Walgreens of San Patricio, Inc.,* **2001 J.T.S. 154,** a las págs. 371-372; *Almodóvar Marchany v. GP Industries, Inc.,* **2001 J.T.S. 7,** a la pág. 757; *Delgado Zayas v. Hosp. Int. Med. Avanzada,* 137 D.P.R. a la pág. 650; *Srio. del Trabajo v. I.T.T.,* 108 D.P.R. a las págs. 542-543.

Las determinaciones sobre estos particulares formuladas por el Tribunal de Primera Instancia parecen estar adecuadamente sostenidas por la prueba desfilada ante dicho foro.

Ahora bien, el arbitrio del juzgador de hechos no es absoluto ni goza de inmunidad frente a la función revisora de este Tribunal. Véanse, *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 14 (1987); *Vélez v. Srio. de Justicia,* 115 D.P.R. 533, 545 (1984); *Vda. de Morales v. De Jesús Toro,* 107 D.P.R. 826, 829 (1978).

Empresas Picú se queja, en este sentido, de la determinación del foro apelado de que las medidas tomadas contra el apelado respondieron a discrimen por edad. La apelante plantea que el récord estableció precisamente que dicha parte no había actuado contra el apelado por razones de edad, sino debido a que sospechaba de la honestidad de dicho empleado.

Al llegar a su decisión, el Tribunal de Primera Instancia parece haber conferido gran peso a la presunción de discrimen establecida por la Ley Núm. 100, 29 L.P.R.A. sec. 148. En efecto, en el presente caso, según hemos visto, el despido del apelado fue injustificado. El apelado consiguió, además, relacionar dicho despido con una motivación discriminatoria, al presentar evidencia de que la Sra. Santiago le había comentado que *"aquí no queremos viejos."* El apelado, además, estaba dentro de la categoría protegida por la A.D.E.A., al contar con 53 años de edad. En estas

circunstancias, el peso correspondía a Empresas Picú para establecer que la verdadera razón para el despido había sido una no discriminatoria. *Díaz Fontánez v. Wyndham Hotel Corp.,* **2001 J.T.S. 146**, a las pág. 263; *Alberty Marrero v. Rodríguez Emma*, **99 J.T.S. 169**, a la pág. 336; *Ibañez v. Molinos de Puerto Rico*, 114 D.P.R. a las págs. 50-52.

Ahora bien, somos de la opinión de que Empresas Picú efectivamente descargó dicho peso, estableciendo que la razón para su conducta lo fueron las irregularidades halladas por la compañía en la Tiendita durante los meses de enero y febrero de 1996. Dichos hallazgos, según indicado, dieron lugar al despido del Sr. Rivera como supervisor de dicha área. También provocaron que se trajeran empleados nuevos al dicha área y que se redefinieran las atribuciones del apelado, efectivamente privándolo de sus funciones.

Antes de las auditorías de 1996, no parecen haber existido quejas de la compañía en torno al apelado. No fue sino hasta que se detectaran serias irregularidades en la Tiendita que esta actitud varió y que Empresas Picú comenzó deliberadamente a ejercitar presión sobre dicha parte y a despojarlo de sus funciones, hasta que el apelado decidió reportarse al Fondo.

Cabe señalar que, en su sentencia, el Tribunal de Primera Instancia determinó precisamente que la empresa había intentado imputarle al apelado, *"sin prueba ninguna, que el dinero en la caja registradora se estaba desapareciendo por su culpa."* Aunque, según indicado, ello configura un despido injustificado, es evidente que el motivo principal del mismo no fue discriminatorio.

Empresas Picú se queja, en este sentido, que no hubo prueba para establecer que las personas enviadas a la Tiendita fuesen mucho más jóvenes que el apelado. Alega, en particular, que la Sra. Santiago (quien supuestamente le había dicho al apelado que ella venía a defender el dinero de Julio Eduardo y que no querían viejos en la Tiendita) tenía 51 años y era esencialmente contemporánea al apelado.

El Tribunal Supremo de Puerto Rico ha aclarado que no todo despido injustificado resulta discriminatorio, aunque se reconoce que un despido discriminatorio es injustificado. *Díaz Fontánez v. Wyndham Hotel Corp.,* **2001 J.T.S. 146**, a las pág. 265; *Ibañez v. Molinos de Puerto Rico*, 114 D.P.R. a la pág. 55. Una reclamación bajo la Ley 100 no procede cuando, como en el presente caso, el patrono establece que el motivo para el despido no fue discriminatorio, aunque el despido hubiese sido llevado a cabo sin justa causa. *Jusino Figueroa v. Walgreens of San Patricio, Inc.,* **2001 J.T.S. 154**, a la pág. 372; *Alberty Marrero v. Rodríguez Emma*, **99 J.T.S. 169**, a la pág. 336; *Rivera Aguila v. K-Mart de Puerto Rico,* 123 D.P.R. a las págs. 609-610; *Odriozola v. S. Cosmetic Dist. Corp.,* 116 D.P.R. a las págs. 502-503; *Ibañez v. Molinos de Puerto Rico*, 114 D.P.R. a las págs. 56-57.

En la situación de autos, el apelado no presentó evidencia adicional para tratar de establecer que la prueba desfilada por Empresas Picú constituyera un mero pretexto para su despido. *Hernández v. Trans Oceanic Life Insurance Company,* **2000 J.T.S. 125**, a la pág. 1,563; *Ibañez v. Molinos de Puerto Rico,* 114 D.P.R. a las págs. 56-57.

En estas circunstancias, procede revocar aquella porción del dictamen apelado que declaró con lugar la demanda por discrimen bajo la Ley Núm. 100 y el A.D.E.A., sin menoscabo al derecho del apelado a recibir la mesada que dispone la Ley Núm. 80.

Por los fundamentos expresados, se revoca la sentencia apelada en cuanto a las causas de acción por discrimen bajo la Ley Núm. 100 y el A.D.E.A., las cuales se desestiman. Se confirma el dictamen apelado, en cuanto a la causa de acción bajo la Ley Núm. 80. Se devuelve el asunto al Tribunal de Primera Instancia para que proceda a la fijación de la mesada correspondiente y para que proceda a revisar y ajustar los honorarios de abogado concedidos, en atención al resultado al que llegamos.

Lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General. El Juez Aponte Jiménez emitió Voto Disidente y de Conformidad.

**VOTO DISIDENTE Y DE CONFORMIDAD DEL JUEZ APONTE JIMENEZ - 2002 DTA 89**

San Juan, Puerto Rico, a 22 de abril de 2002

Disiento. Los hechos y circunstancias medulares en que me baso surgen de los autos y de la sentencia apelada. Resulta de importancia destacar lo siguiente: Según el foro de instancia, la acción de la querellada-apelante, Empresas Picú, consistente en contratar los servicios de la señora María Santiago para ocupar la posición de supervisora de la *"Tiendita"*, donde trabajaba el querellante-apelado, unido a que éste fue sustituido en su puesto el 19 de febrero de 1996 por la señora Carmen Sánchez luego de que el supervisor de esa dependencia incurriera en ciertas serias irregularidades relacionadas con el manejo de fondos, constituyó un despido constructivo. *Id.* sentencia apelada, determinaciones 6 y 8. Así lo concluye el dictamen que revisamos, a pesar de que en él se reconoce que el querellante-apelado continuó trabajando con Empresas Picú hasta ser notificado que debía acudir a Recursos Humanos de la empresa el 13 de abril de 1996, cita a la cual no asistió reportándose en su lugar al Fondo del Seguro del Estado ese mismo día. Fue dado de alta definitiva el 12 de marzo de 1997. No obstante omitió regresar a su trabajo. En vista de ello, se le notificó el 12 de junio de 1997, tres (3) meses después de haber sido dado de alta por el Fondo que se estaba retirando su nombre de la nómina de la compañía. Es decir, fue despedido.

De la exposición narrativa estipulada de la prueba, se desprende que el querellante-apelado declaró durante la vista del caso que la señora Santiago, quien entonces ocupaba la posición de supervisora en la *"Tiendita"*, le expresaba *"aquí no queremos viejos incapacitados"*. Añadió que esto lo decía *"porque el tenía una condición en la espalda"*. *Id.* pág. 2 exposición narrativa de la prueba estipulada. Afirmó, asimismo, *"que se reportó al Fondo del Seguro del Estado el día 17 de abril de 1996 por una condición de la espalda"* y que luego se le sugirió por el doctor Reyes *"que fuera a Ponce por una condición emocional²*. *Id.* pág. 9 exposición narrativa de la prueba estipulada. El 5 de febrero de 1997, se le había extendido un C.T. por condición emocional. Véase, pág. 26 apéndice del recurso. Los autos no reflejan que notificara de ello a Empresas Picú.

No surge de los autos, de la exposición narrativa de la prueba estipulada, ni de la sentencia apelada que el querellante-apelado solicitara reinstalación a su trabajo dentro de los quince (15) días de haber sido dado de alta por el Fondo y antes de transcurrir doce (12) meses desde la fecha del accidente, o que de forma alguna reclamara su empleo. Tampoco que su puesto estuviese siendo ocupado por otra persona. Art. 5A de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7. El foro apelado, en aparente alusión a las expresadas omisiones del querellante-apelado, resolvió que una vez éste fue dado de alta por el Fondo, *"no había puesto o trabajo al cual regresar"*. *Id.* pág. 8 sentencia apelada. Concluyó así basado exclusivamente en que desde el 19 de febrero de 1996, ya había sido despedido de forma constructiva.

No coincido con la mayoría del panel que con esas circunstancias presentes se pueda resolver que Empresas Picú despidió sin justa causa al querellante-apelado desde el 19 de febrero de 1996. Calificar los hechos antes relatados como un despido equivale a una interpretación extensiva impermisible del Art. 5 de la Ley 80 (29 L.P.R.A. sec. 185e). Más aún, cuando de los autos no surge ni un ápice de evidencia que tienda a demostrar que el querellante-apelado optó por renunciar y no regresar a su trabajo luego de haber sido dado de alta por el Fondo como resultado de cualquier conducta previa atribuible a Empresas Picú. Lo anterior es independiente de que éste continuó trabajando durante los meses de febrero y marzo de 1996 y hasta el mismo momento en que se reportó al Fondo del Seguro del Estado el 13 de abril de 1996. Es decir, el querellante-apelado, antes de reportarse al Fondo, en ningún momento renunció a su empleo. Por el contrario, continuó trabajando hasta que se reportó al Fondo, siendo luego dado de alta el 12 de marzo de 1997. Es tres meses después y más de doce (12) desde que se reportó al Fondo que lo despiden al no reintegrarse a su trabajo ni solicitar reinstalación luego de habérsele dado de alta. Resolver que desde el mes de febrero de 1996 operó una renuncia constructiva es modificar los hechos para conciliarlos con el precepto legal aludido de la Ley 80. Los

determinados por el foro apelado no configuran el despido que define la Ley 80 en su Art. 5.

Para fines de dicho precepto sólo se conciben tres (3) situaciones, *i.e.,* la cesantía del empleado, su suspensión indefinida que se prolongue por más de tres (3) meses; y la renuncia motivada por actuaciones del patrono. En relación con la tercera situación, es decir, la renuncia, los autos ni la exposición narrativa estipulada de la prueba acreditan la razón por la cual al apelado no se reportó a trabajar después de que el Fondo le dio de alta.

Referente a la acción de discrimen, concurro con el resultado a que llega la mayoría del panel, pero por otros motivos. Al descartar que aquí hubo un despido injustificado, carece de base el argumento principal del tribunal apelado para concluir que las actuaciones de Empresas Picú fueron discriminatorias. En ausencia de un despido sin justa causa que active la presunción de discrimen, no se le puede imponer a Empresas Picú el peso de la prueba para establecer que no incurrió en un despido discriminatorio. La omisión de dicho patrono en presentar prueba para derrotar la referida presunción, tomada por el tribunal apelado como factor de discrimen, resulta, pues, académica.

Aun cuando el tribunal de instancia alude en su sentencia a ciertos comentarios de la nueva supervisora de la *"Tiendita"* en el sentido de que ésta se burlaba del querellante-apelado por su edad y expresaba que *"aquí no queremos viejos",* no hay constancia que ello de por sí fuera factor para sustituirlo por otra persona de su edad. Más aún cuando el propio querellante-apelado le representó al tribunal apelado que dicho comentario obedecía al padecimiento en la espalda que luego lo llevó a reportarse al Fondo. En cambio, todo parece indicar, apreciando la sentencia apelada colectivamente, que las sospechas de Empresas Picú sobre su participación en el mal manejo de los fondos de la *"Tiendita"* bajo el anterior supervisor, constituyó el factor principal para la acción tomada de efectuar otros nombramientos en la *"Tiendita".*

Por los fundamentos expuestos, mi voto es para revocar en su totalidad la sentencia impugnada.

**JOSE M. APONTE JIMENEZ**
**Juez de Apelaciones**