Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| WANDA LISETTE DURÁN MONGE<br><br>Apelada<br><br><br>v.<br><br><br>CENTRAL PARKING SYSTEM OF PUERTO RICO, INC.<br><br>Apelante | KLAN202300695 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. TJ2021CV00428<br><br>Sobre: Despido Injustificado (Ley 80); Discrimen por Edad (Ley 100); Procedimiento Ordinario |

Panel integrado por su presidente, el Juez Hernández Sánchez[1], el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Salgado Schwarz, Carlos G., Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 14 de febrero de 2024.

Comparece ante nos mediante recurso de apelación Central Parking System of Puerto Rico, Inc. (CPS o Apelante). Nos solicita que revoquemos la *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI) el 27 de marzo de 2023.[2] Por medio del referido dictamen, el TPI declaró *Ha Lugar* la *Moción de Sentencia Sumaria Parcial* presentada por la señora Wanda Lisette Durán Monge (señora Durán Monge o Apelada) concediéndole así las causas de acción por despido injustificado y despido discriminatorio por razón de edad.

---

[1] Mediante Orden Administrativa OATA-2023-182, en conformidad con la Orden Administrativa JP-2018-035 debido a la inhibición del Hon. Roberto Rodríguez Casillas, se designa al Hon. Juan R. Hernández Sánchez para entender y votar.
[2] Notificada el 28 de marzo de 2023

Número Identificador
SEN2024_____

Por los fundamentos que expondremos a continuación, **revocamos** el dictamen apelado y **devolvemos** el asunto al tribunal de instancia, para procedimientos conforme lo aquí dispuesto.

## I

Según surge del expediente ante nuestra consideración, CPS es una compañía dedicada a la administración de localidades/facilidades de estacionamientos. La señora Durán Monge laboró para la Apelante desde el 11 de agosto de 1999 hasta el 8 de enero de 2021. La Apelada se desempeñó inicialmente como Supervisora de Facilidad y, al cabo de varios años, fue ascendida a Gerente de Facilidad. Puesto que ocupó hasta la fecha de su alegado despido. En enero de 2020 ocurrieron una serie de terremotos y temblores en Puerto Rico. Para esta fecha, la señora Durán Monge laboraba en la localidad Embassy Suites de Isla Verde y se encontraba bajo tratamiento médico con una psiquiatra. Durante su tratamiento, la señora Durán Monge le manifestó a su psiquiatra que le tenía pánico a los temblores y a la posibilidad de que éstos provocaran un Tsunami.

Por ello, el 29 de enero de 2020 la psiquiatra de la Apelada le remitió una carta a CPS explicando que su paciente padecía de ansiedad y ataques de pánico, debido a los temblores y la proximidad entre su lugar de trabajo con el mar. De manera que, la psiquiatra de la señora Durán Monge recomendó que su paciente fuese reubicada en otra localidad que no desatara una crisis o exacerbara su condición emocional.

A raíz de esto, la señora Joanice Vázquez (señora Vázquez), Directora de Recursos Humanos, y la señora Valerie Hernández (señora Hernández), entonces Gerente

Senior de CPS, se reunieron con la señora Durán Monge para discutir la recomendación de su psiquiatra. La Apelada explicó que, en efecto, les tenía pánico a los temblores de tierra y a los posibles tsunamis que estos pudiesen provocar. Así las cosas, la señora Vázquez y la señora Hernández le concedieron a la Apelada su solicitud de acomodo razonable. Acordaron asignar a la señora Durán Monge al estacionamiento del Banco Popular de Puerto Rico-El Señorial (BPPR-El Señorial) a partir de febrero de 2020.

Sin embargo, en marzo de 2020 la pandemia mundial del Covid-19 provocó un estado de emergencia sin precedentes en todos los rincones del mundo, incluyendo a Puerto Rico. Ante este cuadro, la entonces Gobernadora de Puerto Rico Wanda Vázquez Garced decretó mediante Orden Ejecutiva un estado de emergencia y *lockdown*. Como consecuencia del *lockdown*, el BPPR-El Señorial envió a sus empleados a trabajar de manera remota desde sus hogares. Esto provocó que los de CPS destacados en dicha localidad fueran cesanteados. En el caso de la señora Durán Monge, y en aras de evitar su cesantía, CPS le ofreció realizar tareas temporeras de Gerente de Facilidad en otras facilidades cubriendo a los gerentes que se ausentaban por razón de enfermedad o vacaciones. Cabe mencionar que en estas facilidades también había mermado el flujo de visitantes.

Cuando ya no existían vacantes que la señora Durán Monge pudiera cubrir, CPS le ofreció a la Apelada que utilizara su licencia de vacaciones puesto que tenía varias horas acumuladas. Más adelante, entre el 15 de junio y el 4 de agosto, la señora Durán Monge estuvo en un *layoff* para cuidar de su madre que padecía de cáncer.

CPS, por su parte, se encargó de que la Apelada recibiera beneficios de seguro por desempleo.

Finalmente, el 8 de enero de 2021, la Apelante remitió una carta de cesantía a la señora Durán Monge debido a la reducción de la fuerza laboral. Seis meses después de la cesantía de la Apelada, el estacionamiento del BPPR-El Señorial seguía inoperante. Mientras, la señora Durán Monge le remitió varios comunicados a CPS indicando que esperaba por la reapertura de los lotes y reafirmó su disponibilidad de comenzar labores de inmediato, donde fuese necesitada.

El 1 de julio de 2021, más de seis meses después de su cesantía, la señora Vázquez se comunicó por vía telefónica con la Apelada para ofrecerle una posición como Supervisora de Facilidad en el estacionamiento del Embassy Suites de Isla Verde con un salario de $9.00 por hora. La señora Durán Monge se expresó insatisfecha con la oferta, no por el puesto, sino porque el salario propuesto por CPS resultó ser menor al que devengó con anterioridad a la cesantía. La señora Vázquez le explicó a la Apelada que de no recibir respuesta al próximo día, 2 de julio de 2021, se entendería que no aceptaba la oferta.

Llegada la fecha límite, CPS no recibió respuesta por parte de la señora Durán Monge. Sin embargo, decidió aguardar por su respuesta hasta el 5 de julio de 2021, cuando la señora Vázquez se comunicó nuevamente con la Apelada. La Apelada no respondió ni en la afirmativa ni en la negativa, sino que indicó que pensaría sobre ello. Pasados los días, CPS no obtuvo respuesta de la señora Durán Monge. Por lo que, retiró la oferta de empleo de la Apelada.

Poco después de que se le ofreciera la posición de Supervisora de Facilidades a la señora Durán Monge, CPS hizo un ajuste en sus escalas salariales. De manera que, el puesto que CPS le ofreció a la Apelada ahora devengaría un salario de $11.37 por hora. La señora Durán Monge advino en conocimiento sobre el aumento salarial y, en adición a esto, que el puesto ahora era ocupado por una persona más joven que ella.

Ante este cuadro, el 7 de septiembre de 2021, la señora Durán Monge presentó una *Demanda*[3] sobre despido injustificado contra CPS vía procedimiento ordinario. Alegó que fue despedida injustificadamente en violación a las disposiciones de la Ley Núm. 80 del 30 de mayo de 1976, según enmendada (Ley Núm. 80)[4] y la Ley Núm. 100 del 30 de junio de 1959, según enmendada (Ley Núm. 100)[5]. Consecuentemente, solicitó el pago de las sumas reclamadas, así como el pago de las costas y honorarios de abogado. En apretada síntesis, arguyó que CPS no consideró la retención preferente por antigüedad dispuesta en la Ley Núm. 80. Alegó, además, que CPS actuó de manera discriminatoria por razón de su edad toda vez que le ofreció el puesto de Gerente de Facilidad a una persona más joven que ella y con mayor paga, en clara contravención a las disposiciones de la Ley Núm. 100.

El 12 de octubre de 2021, CPS presentó su correspondiente *Contestación a Demanda*.[6] En ella, negó las alegaciones contendidas en la demanda y levantó varias defensas afirmativas. Entre estas, que la señora Durán Monge fue cesanteada por justa causa conforme a

---

[3] Apéndice del recurso, págs. 1-8.
[4] 29 LPRA sec. 185 *et seq.*
[5] 29 LPRA sec. 146 *et seq.*
[6] *Id.*, págs. 9-18.

las disposiciones de la Ley Núm. 80. Que la cesantía se debió a razones que atañan al buen y normal funcionamiento de la empresa. Arguyó que la cesantía no podía clasificarse como una discriminatoria puesto que, la edad de la señora Durán Monge no fue un factor determinante en la toma de decisiones sobre los términos y condiciones de empleo de esta.

Luego de haber culminado el descubrimiento de prueba, el 10 de noviembre de 2022 CPS presentó una *Moción de Sentencia Sumaria*.[7] Alegó que, la señora Durán no puede prevalecer en sus reclamaciones de despido injustificado y discriminatorio por razón de edad. Ello, debido a que la cesantía de la apelada constituye justa causa bajo la Ley Núm. 80 y, en la medida en que la cesantía fue con justa causa, se derrumba automáticamente la reclamación de despido discriminatorio por razón de edad bajo la Ley Núm. 100.

Por su parte, el 6 de diciembre de 2022, la señora Durán presentó una *Solicitud de Sentencia Sumaria Parcial*.[8] En síntesis, la señora Durán arguyó que tiene derecho a ser compensada conforme a lo establecido en la Ley Núm. 80, según enmendada antes de la aprobación de la Ley de Transformación y Flexibilidad Laboral, Ley Núm. 4 de 26 de enero de 2017(Ley 4-2017)[9]. Además, alegó que le es de aplicación el Artículo 3 (b) de la Ley Núm. 80. De modo que, CPS venía obligada por ley a cumplir con el criterio de antigüedad para retener a la apelada y, al no hacerlo, las acciones de la Apelante demuestran que el despido de la señora Durán fue uno injustificado y caprichoso.

---

[7] *Id.*, págs. 25-65.
[8] *Id.*, págs. 199-218.
[9] 29 LPRA secc. 131 *et seq.*

Luego de varios trámites procesales, el 29 de diciembre de 2022, CPS presentó una *Réplica a Moción de Sentencia Sumaria Parcial*.[10] En síntesis, alegó que en la medida en que la cesantía de Durán fue justificada bajo el Artículo 2(d) de la Ley Núm. 80, se derrumba automáticamente la reclamación de despido discriminatorio por razón de edad bajo la Ley Núm. 100, según la jurisprudencia del Tribunal Supremo pautada en la Opinión emitida en el caso de *Báez García v. Cooper Laboratories*, 120 DPR 145 (1987). Según la Apelante, allí se explica que, en tanto y en cuanto la separación de empleo del allí demandante fue justificada bajo la Ley Núm. 80, no puede reputarse discriminatoria. Ello, pues, "ausentes otras circunstancias la existencia de justa causa para el despido dispone del planteamiento de que la decisión de despedir estuvo fundamentada en una política discriminatoria por razón protegida."

Así las cosas, el 24 de marzo de 2023, el TPI emitió una *Sentencia Parcial*.[11] En ella, resolvió que el despido de la señora Durán fue discriminatorio e injusto. Sin embargo, el foro primario indicó en su escrito que la cuantía que le corresponde a la señora Durán por concepto de su despido injustificado se determinaría luego de la celebración de una vista debido a la falta de información sobre el salario de los últimos tres años de la apelada.

Inconforme, El 4 de abril de 2023, CPS presentó una *Moción de Reconsideración en Caso No Ventilado Bajo el Procedimiento Sumario*.[12] En síntesis, alegó nueve errores en los que, a su entender, erró el TPI. Sin embargo, el 10 de julio de 2023, el foro primario emitió una

---

[10] *Id.*, págs. 1142-1153.
[11] *Id.*, págs. 1156-1192.
[12] *Id.*, págs. 1232-1236.

*Resolución*[13] mediante la cual declaró *No Ha Lugar* la moción de reconsideración de la Apelante.

Insatisfecho aún, el 9 de agosto de 2023, CPS acudió ante este foro y alegó que el TPI cometió los siguientes errores:

A. ERRÓ EL TPI AL APLICAR A LA CAUSA DE ACCIÓN DE ALEGADO DESPIDO INJUSTIFICADO EL LENGUAJE DEROGADO DEL ART. 3 DE LA LEY 80. ELLO, NO OBSTANTE, CPS HABER ALERTADO AL TPI, TANTO EN SU MSS, COMO EN SU RÉPLICA, ACERCA DE QUE DUTRÁN[SIC.]PRETENDÍA INDUCIRLO A ERROR CITANDO EL LENGUAJE DEROGADO DEL ART. 3.

B. ERRÓ EL TPI AL DEJAR DE APLICAR, EN VEZ, EL ART. 3-A DE LA LEY 80, EL CUAL FUE AÑADIDO A DICHO ESTATUTO POR LA *LTFL*, ESPECÍFICAMENTE, Y A MANERA DE REFORMA, PARA SUSTITUIR EL MENCIONADO LENGUAJE DEROGADO DEL ART. 3 Y ESTABLECER LA NORMA GENERAL DE QUE CUANDO UN PATRONO TIENE MÁS DE UN (1) ESTABLECIMIENTO O SUCURSAL, ANTE EL CIERRE, REORGANIZACIÓN O REDUCCIÓN DE PERSONAL DE/EN UNO DE LOS ESTABLECIMIENTOS, EL PATRONO SOLO TIENE QUE CONSIDERAR PARA FINES DE DETERMINAR ANTIGÜEDAD, LOS EMPLEADOS DEL ESTABLECIMIENTO OBJETO DEL CIERRE, REORGANIZACIÓN O REDUCCIÓN DEL PERSONAL. ELLO, NO OBSTANE CPS HABER ALERTADO AL TPI, TANTO EN SU *MSS*, COMO EN SU *RÉPLICA*, ACERCA DE QUE DURÁN PRENTENDÍA INDUCIRLO A ERROR CITANDO UN ESTADO DE DERECHO DEROGADO.

C. ERRÓ EL TPI AL TOMAR EN CONSIDERACIÓN LA ANTIGÜEDAD DE GERENTES DE LOCALIDAD DE OTROS ESTABLECIMIENTOS DE CPS, AJENOS AL QUE EXPERIMENTÓ EL CIERRE DE OPERACIONES Y EN EL QUE SE DESEMPEÑABA DURÁN, CUANDO LOS HECHOS INCONTROVERTIDOS DEMOSTRARON QUE DURANTE LOS ÚLTIMOS 12 MESES DE EMPLEO DE DURÁN (1) NO FUE PRÁCTICA USUAL NI FRECUENTE DE CPS TRASLADAR A SUS EMPLEADOS EN LA CLASIFICACIÓN OCUPACIONAL GERENTE DE FACILIDAD ENTRE SUS DISTINTOS ESTABLECIMIENTOS (2) NI SU PERSONAL ESTUVO BAJO SUPERVISIÓN DIRECTA COMÚN DIARIAMENTE.

D. ERRÓ EL TPI AL APLICAR LA DEROGADA PRESUNCIÓN DE DESPIDO INJUSTIFICADO QUE CONTUVO LA LEY 80 COLOCANDO EN EL CPS EL PESO DE PROBAR QUE DURÁN FUE CESANTEADA CON JUSTA CAUSA CUANDO, POR

---

[13] *Id.*, pág. 1241.

EL CONTRARIO, DEBIÓ COLOCAR EN DURÁN EL PESO DE PROBAR QUE SU CESANTÍ FUE INJUSTIFICADA.

E. ERRÓ EL TPI AL APLICAR <u>LA DEROGADA</u> PRESUNCIÓN DE DISCRIMEN QUE CONTUVO EL ART. 3 DE LA LEY 100 Y USAR EL ESQUEMA PROBATORIO QUE A SU LUZ SE ADOPTÓ EN LAS *OPINIONES* DICTADAS EN <u>DÍAZ FONTÁNEZ V. WYNDHAM</u>, 155 D.P.R. 364 (2001) Y <u>RIVERA FIGUEROA V. THE FULLER BRUSH CO.</u>, 180 D.P.R. 894 (2011), CUANDO TAL ESQUEMA QUEDÓ DEROGADO COMO RESULTADO DE LA DEROGACIÓN DE LA PRESUNCIÓN DE DISCRIMEN.

F. ERRÓ EL TPI A INFERIR DE UN HECHO <u>QUE LA JURISPRUDENCIA CLARAMENTE REPUTA COMO INSUFICIENTE</u> QUE CPS CESANTEÓ A DURÁN MEDIANDO DISCRIMEN POR EDAD; SIENDO TAL HECHO INSUFICIENTE EL QUE A LA EMPLEADA ALEXANDRA PÉREZ, MENOR QUE DURÁN, TIEMPO DESPUÉS DE LA CESANTÍA DE DURÁN, SE LE ASCENDIÓ A GERENTE DE FACILIDAD,Y SE LE ASIGNÓ UNA VACANTE DE GERENTE DE FACILIDAD QUE PARA COLMO NI SIQUIERA SURGIÓ EN LA LOCALIDAD DE CPS TUVO QUE CERRAR POR EL LOCKDOWN//PANDEMIA Y EN LA QUE SE DESEMPEÑABA DURÁN, SINO EN OTRA AJENA A ESTA.

G. ERRÓ EL TPI AL ABUSAR DE SU DISCRECIÓN Y ASÍ DESPOJAR A CPS DEL DERECHO CONSTITUCIONAL QUE LE ASISTE A UN DEBIDO PROCESO DE LEY A DEFENDERSE EN UN JUICIO PLENARIO DE LA CAUSA DE ACCIÓN DE DESPIDO DISCRIMINATORIO POR EDAD RESOLVIENDO, <u>SIN QUE LE FUERA SOLICITADO</u>, <u>SUMARIAMENTE</u>, QUE DURÁN FUE CESANTEADA MEDIANDO TAL DISCRIMEN A PESAR DE QUE DURÁN LO QUE PRESENTÓ FUE UNA *MSSP* EN LA QUE ÚNICA Y EXCLUSIVAMENTE SOLICITÓ QUE SE RESOLVIERA SUMARIAMENTE SU RECLAMACIÓN DE ALEGADA CESANTÍA INJUSTIFICADA BAJO LA LEY 80, INDICANDO DURÁN EXPRESAMENTE QUE LA "RECLAMACIÓN [DE ALEGADO DESPIDO DISCRIMINATORIO POR EDAD] SE DILUCIDARÁ EN EL JUICIO EN SU FONDO".

H. ERRÓ EL TPI AL ABUSAR DE SU DISCRECIÓN <u>AL APLICAR</u>, EN PERJUICIO DEL DERECHO CONSTITUCIONAL A UN DEBIDO PROCESO DE LEY QUE ASISTE A CPS, <u>DOS (2) VARAS</u> EN EL PROCESO ADJUDICATIVO DE LAS MOCIONES DISPOSITIVAS DE LAS PARTES. ELLO, DADO QUE PARA PRESENTAR SU *MSS* CPS CUMPLIÓ CON LA REGLA 36 DE PROCEDIMIENTO CIVIL AL CEÑIRSE AL TÉRMNO DE 30 DÍAS CONTADO A PARTIR DE LA FECHA LÍMITE ESTABLECIDA POR EL TPI PARA CONCLUIR EL DESCUBRIMIENTO DE PRUEBA, Y EL TRIBUNAL NO REQUERIRLE LO MISMO A DURÁN, NO

OBSTANTE CPS HABERLE SUPLICADO AL TPI EN SU *RÉPLICA* QUE APLICARA UNA (1) MISMA VARA Y NO CONSIDERARA LA NO ANUNCIADA Y SORPRESIVA *MSSP* PRESENTADA POR DURÁN 66 DÍAS DESPUÉS DE TAL FECHA, DÁNDOLE A DURÁN DOS (2) VENTAJAS INDEBIDAS: (1) MÁS DEL DOBLE DE TIEMPO QUE TUVO CPS Y (2) HABER TENIDO LA OPORTUNIDAD DE ESTUDIAR LA *MSS* DE CPS PREVIO A CONFECCIONAR SU TARDÍA Y SOPRESIVA *MSSP*.

I. ERRÓ EL TPI AL ABUSAR DE SU DISCRECIÓN AL ACEPTAR LA *MSSP* PRESENTADA POR DURÁN A PESAR DE QUE ESTA NO CUMPLIÓ CON LAS EXIGENCIAS DE LA REGLA 36.3(B)(2) DE PROCEDIMIENTO CIVIL Y LA NORMATIVA INTERPRETATIVA DE ESTA: RAMOS PÉREZ V. UNIVISIÓN, Y SLG ZAPATA-RIVERA V. JF MONTALVO, CUANDO DURÁN NO PRESENTÓ LA *CONTESTACIÓN* A LA *MSS* DE CPS QUE DISPONE LA REFERIDA REGLA CON "REFERENCIA A LOS PÁRRAFOS ENUMERADOS POR LA PARTE PROMOVENTE [EN SU *MSS*] DE LOS HECHOS ESENCIALES Y PERTINENTES QUE ESTÁN REALMENTE Y DE BUENA FE CONTROVERTIDOS", SINO QUE OPTÓ POR PRESENTAR UNA NO ANUNCIADA Y SORPRESIVA *MSSP* QUE INCLUÍA UNA PROPIA RELACIÓN DE HECHOS SUPUESTAMENTE INCONTROVERTIDOS, AJENA A LA RELACIÓN ENUMERADA DE CPS EN SU *MSS*, CON LA QUE, A MANERA DE SUBTERFUGIO, Y "POR LA COCINA", INTENTÓ CONTROVERTIR LOS HEHCOS PROPUESTOS POR CPS. ELLO, A PESAR DE QUE EN SU *RÉPLICA*: (1) CPS CONDENÓ TAL INTENTONA ALERTANDO AL TPI DE LA MISMA Y (2) LE SUPLICÓ AL TPI QUE, EN LA ALTERNATIVA, DE CONSIDERAR ELTPI[SIC.] QUE DURÁN SÍ HABÍA CUMPLIDO CON LA REGLA Y LAS *OPINIONES* DEL TS EN RAMOS PÉREZ Y SLG ZAPATA-RIVERA, LO QUE ALLÍ NEGAMOS CON VEHEMENCIA, ASÍ LO INDICARA POR ESCRITO Y BRINDARA A CPS LA OPORTUNIDAD DE PRESENTAR UNA *CONTESTACIÓN* A LA *MSSP*, DESPOJANDO ASÍ NUEVAMENTE A CPS DE SU DERECHO CONSTITUCIONAL A UN DEBIDO PROCESO DE LEY.

J. ERRÓ EL TPI AL ADOPTAR COMO DETERMINACIONES DE HECHOS, ADEMÁS DE LOS HECHOS PROPUESTOS COMO INCONTROVERTIDOS POR CPS EN SU *MSS*, LOS CUALES SÍ PROCEDÍA ADOPTARSE COMO TAL, LOS PROPUESTOS POR DURÁN EN SU *MSSP*.

K. ERRÓ EL TPI AL CONCEDERLE A DURÁN AMBOS REMEDIOS, DAÑOS Y PERJUICIOS BAJO LA LEY 100 Y LA MESADA BAJO LA LEY 80, CUANDO LA JURISPRUDENCIA ES CLARA EN QUE SOLO PROCEDÍA CONCEDERSE UNO: EL DE MAYOR CUANTÍA.

L. ERRÓ EL TPI AL DENEGAR LA *MSS* DE CPS Y NO DESESTIMAR SUMARIAMENTE Y CON PERJUICIO EL CASO DE EPÍGRAFE.

Por su parte, la señora Durán Monge compareció mediante *Alegato de la Parte Apelada en Oposición al recurso de Apelación*. En síntesis, sostuvo que su despido había sido injustificado por no haber seguido el orden de antigüedad prescrito en la Ley Núm. 80, *supra*, y por haber sido con ánimo de discrimen. Arguyó que el foro de instancia había aplicado correctamente las disposiciones de la Ley Núm. 80.

Con el beneficio de la comparecencia de las partes y resumidos los hechos que originan la presente controversia, examinemos el derecho aplicable.

**II**

**A. La Sentencia Sumaria y su revisión por el Tribunal de Apelaciones**

La Regla 36 de Procedimiento Civil les permite a los tribunales dictar sentencia sumariamente cuando los hechos de un caso no están en controversia y el derecho favorece la posición de la parte que la solicita.[14] Mediante la moción de sentencia sumaria, se busca la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales y que, por lo tanto, no requieren la celebración de un juicio en su fondo ya que lo único que resta es dirimir una o varias controversias de derecho.[15]

En virtud de la Regla 36.1 de Procedimiento Civil, la parte reclamante en un pleito puede presentar una moción fundada en declaraciones juradas o aquella evidencia que demuestre la inexistencia de una

---

[14] 32 LPRA Ap. V, R. 36.
[15] *Vera v. Dr. Bravo*, 161 DPR 308, 331 (2004).

controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.[16]

Sin embargo, nuestro Tribunal Supremo ha sido enfático en que ***solo procede que se dicte sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable*** y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia.[17] En primer lugar, el promovente de la moción tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, sobre ningún componente de la causa de acción.[18] En segundo lugar, el oponente viene obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material y, en ese sentido, no cualquier duda es suficiente para derrotar la solicitud de sentencia sumaria.[19]

En esencia, como principio general, los tribunales están impedidos de dictar sentencia sumaria en cuatro instancias: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) cuando de los propios documentos que acompañan la moción surge que existe una controversia sobre algún hecho

---

[16] 32 LPRA Ap. V, R. 36.1.
[17] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109-110 (2015). Énfasis suplido.
[18] *Id*. en la pág. 110.
[19] *Id*. en la pág. 110; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

material y esencial; o *(4) cuando como cuestión de derecho no procede.*[20]

Ahora bien, desde la perspectiva del Tribunal de Apelaciones, esta Curia viene obligada a resolver los asuntos planteados ante su consideración de forma fundamentada.[21] En cuanto al estándar revisor del foro apelativo ante este tipo de moción, el Tribunal Supremo ha precisado que *el Tribunal de Apelaciones utilizará los mismos criterios que el TPI al determinar si procede una sentencia sumaria.*[22] En ese sentido, el foro apelativo se encuentra en la misma posición que el TPI al revisar estas solicitudes.[23] Por último, en *Meléndez González v. M. Cuebas*, el Tribunal Supremo recogió diversos aspectos importantes respecto a la revisión del Tribunal de Apelaciones de las mociones de sentencia sumaria; entre estos resaltan los siguientes: (1) su revisión es *de novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la moción, llevando a cabo todas las inferencias permisibles a favor de esta; (2) debe revisar si en realidad existen hechos materiales en controversia y, de haberlos, debe cumplir con exponer concretamente aquellos hechos materiales que encontró que estaban en controversia y aquellos que no; y *(3) de encontrar que no están incontrovertidos, debe entonces revisar de novo si el TPI aplicó correctamente el derecho a la controversia.*[24]

        **B. Ley Contra el Despido Injustificado**

---

[20] *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014). Énfasis suplido.
[21] *Meléndez González et al. v. M. Cuebas, supra* en la pág. 114.
[22] *Id*. Énfasis suplido.
[23] *Id*. en la pág. 115.
[24] *Id.* en las págs. 118-119. Énfasis suplido.

En Puerto Rico existe una clara política pública protectora de empleo. Por ello, se aprobó la Ley Núm. 80, *supra*, que con el fin de proteger a los obreros que han sido despedidos injustificadamente y para desalentar a los patronos de incurrir en dicha práctica.[25] La Ley Núm. 80 les permite a los empleados despedidos reclamar a su patrono una indemnización, conocida comúnmente como la mesada, cuyo propósito es proveer una ayuda económica para que estos puedan cubrir sus necesidades básicas durante la etapa de búsqueda de un nuevo empleo.[26]

El Artículo 2 de la Ley Núm. 80 define justa causa como "*aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono*".[27] Específicamente, la pieza legislativa expone una lista no taxativa de causas justificadas para el despido. El precitado Artículo dispone u será justa causa para el despido de un empleado lo siguiente:

(a) […]
(b) […]
(c) […]
(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.
(e) […]
(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.[28]

---

[25] *Feliciano Martes v. Sheraton*, 182 PR 368, 379-380 (2011); *Vélez Cortés v. Baxter*, 179 DPR 455, 468-469 (2010).
[26] *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 375 (2001).
[27] 29 LPRA secc. 185b.
[28] *Supra*.

Los dos incisos resaltados responden a las actuaciones del patrono dirigidas a la administración de su negocio, y principalmente se presentan por razones económicas que surgen de la operación diaria de las empresas.[29] Entiéndase, estos motivos surgen de las normas usuales y ordinarias sobre el manejo del negocio que hacen inevitable la cesantía del empleado.[30] Esto significa que un patrono puede modificar su forma de hacer negocios a través de algún tipo de cambio dirigió a incrementar las ganancias el negocio, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes para así poder enfrentar problemas financieros o de competitividad, siempre que responda a una restructuración *bona fide*.[31]

En este tipo de casos, el patrono tiene la obligación de cumplir con el orden de retención preferente establecido en el Artículo 3 de la Ley Núm. 80, *supra*. En específico, dicha disposición establece:

> En cualquier caso en que se despidiesen empleados por las razones indicadas en los incisos (d), (e) y (f) del Artículo 2 de esta Ley, el patrono estará obligado a **retener con preferencia en el empleo a los empleados de más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional** que puedan ser desempeñados por ellos, entendiéndose que se dará preferencia a los empleados despedidos en caso de que dentro de los seis (6) meses siguientes a su cesantía tuviere necesidad de emplear a una persona en labores iguales o similares a las que desempeñaban dichos empleados al momento de su despido y dentro de su clasificación ocupacional, siguiéndose también el orden de antigüedad en la reposición.[32]

---

[29] *Reyes Sánchez v. Eaton Electrical*, 189 PR 586, 598 (2013).
[30] *Supra*.
[31] *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 426 (2013).
[32] 29 LPRA secc. 185c. Énfasis suplido.

La Ley 4-2017, *supra*, enmendó varias piezas legislativas dirigidas a los derechos y protecciones de los obreros. Entre estas, enmendó a la Ley Núm. 80, *supra*. Resulta preciso señalar que en su Artículo 1.2, la Ley 4-2017 dispone que "[*l*]*os empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando los mismos derechos y beneficios que tenían previamente, según lo dispuesto expresamente en los Artículos de ésta*".[33] Esto responde a la intención general de la Asamblea Legislativa de no afectar derechos preexistentes de la clase trabajadora [...].[34] No obstante, el Departamento del Trabajo y Recursos Humanos de Puerto Rico dispuso lo siguiente:

> [...]Como se puede apreciar, esta cláusula general de reserva de derechos (*grandfather clause*) provee expresamente una salvaguarda para los derechos laborales que percibían aquellos empleados contratados previo a su vigencia, según se dispone a lo largo de las enmiendas que introdujo la legislación. En otras palabras, **no basta señalar que un trabajador fue contratado antes del 26 de enero de 2017 para establecer que no hubo cambio alguno en la relación laboral con su patrono, pues resulta necesario evaluar la redacción de la disposición estatutaria específica en controversia.**
> [...]
> En aras de poder analizar si una situación particular está incluida en los cambios prospectivos o si, por el contrario, se trata de una disposición que cobija a todos los empleados de un patrono, **se tendrá que examinar cuidadosamente el texto y la intención de cada artículo de la ley enmendada particular.** [...][35]

Entre las enmiendas a la Ley Núm. 80, *supra*, por parte de la Ley 4-2017 se encuentra la adición del Artículo 3-A. En esencia, este dispone que cuando un

---

[33] 29 LPRA secc. 121a.
[34] Departamento del Trabajo y Recursos Humanos de Puerto Rico, *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, en la pág. 12 (1era ed. 2019).
[35] Departamento del Trabajo y Recursos Humanos, *supra*, en las págs. 12-13.

patrono tenga varias oficinas, fábricas, sucursales o plantas en Puerto Rico, aplicará los criterios de selección establecidos en el Artículo 3 solamente dentro del establecimiento físico afectado por la reducción de personal. Por ello, el Artículo 3-A dispone lo siguiente:

> En el caso de despidos por las razones contempladas en los incisos (d), (e) y (f) del Artículo 2 de esta Ley, cuando el patrono tiene varias oficinas, fábricas, sucursales o plantas en Puerto Rico, los criterios de selección identificados en el Artículo 3 de esta Ley se aplicarán únicamente dentro de cada establecimiento físico impactado por la reducción de personal. No obstante, cuando durante el año inmediatamente previo: (1) los empleados de las clasificaciones ocupacionales afectadas usual y frecuentemente se trasladaban de un establecimiento a otro; y (2) los empleados estaban bajo supervisión directa común en la administración diaria del personal, se deberá comparar a los empleados de los establecimientos así integrados. El hecho de que los empleados participaban de beneficios comunes o estaban regidos por normas o reglas comunes, no será pertinente para la aplicación del método de selección establecido en este Artículo. Además, en las situaciones en que aplique dicho criterio por excepción, el criterio se utilizará únicamente con respecto a las clasificaciones ocupacionales y los establecimientos donde estén presentes dichas características de operación integrada.[36]

**C. Ley Contra el Discrimen en el Empleo**

La dignidad del ser humano, como principio rector en nuestro orden social, es inviolable.[37] La Sección 1 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico prohíbe el discrimen "por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas".[38] El Tribunal Supremo de Puerto Rico ha establecido que estas categorías "responden a circunstancias fortuitas, naturales y espontáneas de la humanidad y son

---

[36] 29 LPRA secc. 185c-1.
[37] *Albino v. Ángel Martínez*, 171 DPR 457, 470 (2007).
[38] Sec. 1, Art. II, Const. ELA, LPRA, Tomo I.

consustanciales al mero hecho de ser y existir".[39] En base a esto, la Asamblea Legislativa adoptó varias leyes cuyo fin es salvaguardar la dignidad del ser humano en el contexto laboral.

La Ley Núm. 100, *supra*, prohíbe el discrimen en el empleo de un patrono hacia un empleado por razón de raza, *edad*, color sexo, entre otros.[40] Esta pieza legislativa "establece responsabilidad civil y criminal para aquellos patronos privados que discriminen en el reclutamiento o en el empleo al crear una causa de acción de daños y perjuicios para el empleado discriminado".[41] Aunque el estatuto no define el término discrimen, nuestro más Alto Foro ha expresado que existe discrimen "cuando ocurre un *trato desigual injustificado*; es decir, cuando alguna persona sufre una desigualdad por prejuicio o por arbitrariedad, sin que exista un fundamento razonable para la falta de trato igual".[42]

Al igual que la Ley Núm. 80, *supra*, la Ley 4-2017 enmendó la Ley Núm. 100, *supra*. Entre sus enmiendas, se encuentra la eliminación de la presunción controvertible a favor del empleado contra su patrono contenida en el Artículo 3 de dicha ley.[43] Esta presunción suponía que el patrono cargara con el peso de la prueba. Específicamente, el Artículo 6.3 de la Ley 4-2017, *supra*, dispone lo siguiente:

> Al aplicarse las disposiciones de cualquier ley de discrimen o represalia en el empleo, se reconocerá lo dispuesto en la legislación y reglamentación federal, al igual que las

---

[39] *Garib Bazaín v. Hosp. Auxilio Mutuo et al.*, 204 DPR 601, 614 (2020).
[40] 29 LPRA secc. 146.
[41] *Id.* Véase, *Garib Bazaín v. Hosp. Auxilio Mutuo et al.*, *supra*, pág. 615.
[42] *Meléndez v. Asoc. Hosp. del Maestro*, 156 DPR 828, 845 (2002). Énfasis suplido.
[43] 29 LPRA secc. 148.

interpretaciones judiciales de las mismas de aquellos tribunales con jurisdicción en Puerto Rico, a los fines de asegurar interpretaciones consistentes en cuanto a términos o disposiciones similares, salvo que las disposiciones de la legislación local requieran una interpretación distinta.[44]

Con esta enmienda, la Asamblea Legislativa adoptó el esquema probatorio utilizado por los foros federales basado en ciertos turnos probatorios, según desarrollado por el Tribunal Supremo federal en McDonnell Douglas Corp. v. Green.[45]

De modo que, ***es necesario que el empleado establezca su caso prima facie con*** prueba que demuestre que su despido fue ***sin justa causa y que existe la modalidad del discrimen alegado.*** Para ello, el empleado debe alegar y probar los elementos claves que tengan el efecto de inferir que el empleado: (1) pertenece a la clase protegida por la legislación; (2) está cualificada para el puesto; (3) fue objeto de una acción adversa; y (4) se benefició a otra persona que no pertenece al mismo grupo protegido.[46]

Establecido el caso *prima facie*, le corresponde al patrono rebatir el mismo mediante una explicación razonable que demuestre la ausencia de ánimo discriminatorio.[47] Si el patrono logra derrotar el caso *prima facie* presentado por el empleado, la inferencia de discrimen no procede. Es aquí donde el empleado debe demostrarle al juzgador que la razón ofrecida por el patrono no es más que un pretexto o subterfugio con el que busca justificar la acción adversa. Este esquema es

---

[44] 29 LPRA secc. 123a.
[45] 411 US 792 (1973).
[46] *Id.*, en la pág. 802.
[47] *Id.*

uno probatorio, que rige la etapa de sentencia sumaria o juicio plenario.[48]

**III**

A tenor con la normativa expuesta, procedemos a evaluar los méritos del recurso ante nuestra consideración. En su recurso, CPS nos solicitó la revocación del dictamen del TPI en el que se declaró *Ha Lugar* la *Moción de Sentencia Sumaria Parcial* de la señora Durán Monge, mediante la cual se acogieron los planteamientos de despido injustificado y discriminatorio. Por su parte, la Apelante se opuso a dicha petición, arguyendo que la cesantía de la apelada no fue injustificada ni discriminatoria. Arguyó, además, que las disposiciones de la Ley Núm. 80, *supra*, aplicables a la controversia ante nos son aquellas según enmendadas por la Ley 4-2017.

Por ello, CPS planteó la comisión de doce errores, los cuales podemos agrupar en seis asuntos: ***primero, la aplicación de disposiciones de ley derogadas***; segundo, las inferencias sobre la cesantía de la señora Durán Monge a base de un hecho insuficiente; ***tercero, la falta de celebración de un juicio plenario***; cuarto, el incumplimiento de la señora Durán Monge con la Regla 36.3(B) de Procedimiento Civil, *supra*; quinto, la concesión de remedios a la señora Durán Monge bajo la Ley Núm. 100 y la Ley Núm. 80; finalmente, la denegatoria de la *Moción de Sentencia Sumaria* de CPS.

Por mandato reglamentario y jurisprudencial, revisamos *de novo* el expediente de la manera más

---

[48] *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, *supra*, en la pág. 159.

favorable hacia la parte que se opuso a la moción, entiéndase, CPS. De este modo, cotejamos si existen hechos materiales en controversia y **si el TPI aplicó correctamente el derecho a la controversia**.[49] Luego de nuestra revisión, nos encontramos en posición de revocar la determinación del TPI por haber hecho una aplicación incorrecta del derecho.

De la *Sentencia Sumaria Parcial* surge que el TPI aplicó, a instancias de la Apelada, disposiciones de la Ley Núm. 80 derogadas por la Ley 4-2017. Como CPS contrató a la señora Durán Monge antes de que entrara en vigor la Ley 4-2017, el TPI acogió lo dispuesto en la cláusula de reserva de derechos de la precitada ley. Esto es, que los empleados contratados con anterioridad a la vigencia de la ley, continuarían disfrutando los mismos derechos y beneficios concedidos por la legislación derogada.[50] Junto con las disposiciones derogadas, el TPI añadió a su análisis de derecho la Guía para la interpretación y aplicación de la Ley Núm. 80.[51]

Sin embargo, el TPI obvió revisar las *Guías para la Interpretación de la Legislación Laboral de Puerto Rico* de 2019, donde el Departamento del Trabajo y Recursos Humanos aclaró el alcance del Artículo 1.2 de la Ley 4-2017. Recordemos que para "*poder analizar si una situación particular está incluida en los cambios prospectivos o si [...] se trata de una disposición que cobija a todos los empleados de un patrono, se tendrá*

---

[49] *Meléndez González v. M. Cuebas, supra.* Énfasis suplido.
[50] 29 LPRA secc. 121.
[51] Guía revisada para la interpretación y aplicación de la Ley Núm. 80 aprobada el 30 de mayo de 1976, Departamento del Trabajo y Recursos Humanos de Puerto Rico, 21 de septiembre de 2000.

*que examinar cuidadosamente el texto y la intención de cada artículo de la ley enmendada particular*".[52]

Surge como parte de las enmiendas a la Ley Núm. 80 la adición del Artículo 3-A. Según expusimos anteriormente, esta disposición se creó para atender los despidos que se dan bajo los incisos (d), (e) y (f) del Artículo 2 de la Ley Núm. 80. Específicamente, para aquellos patronos que cuentan con varias oficinas o sucursales. La enmendada Ley Núm. 80 no ignora la retención por antigüedad establecida en el Artículo 3. No obstante, la intención del Artículo 3-A es ampliar la norma aplicable a las cesantías por las razones establecidas en los incisos (d), (e) y (f) del Artículo 2. Esta ampliación aplica a todos los empleados del patrono por igual, incluyendo a aquellos empleados contratados con anterioridad a la vigencia de la Ley 4-2017.

De manera que, nos es forzoso concluir que el TPI erró al analizar el caso de epígrafe a la luz de las disposiciones derogadas de la Ley Núm. 80, *supra*, lo cual constituye una aplicación incorrecta del derecho. Ante este cuadro, nos vemos en la obligación de revocar la *Sentencia Sumaria Parcial* apelada.

En cuanto al tercer asunto, consideramos prudente y meritorio devolver el caso al foro de instancia. Así, las partes pueden presentar mediante juicio plenario los hechos y la prueba que atañan a la controversia de epígrafe. Además, le brindaría al tribunal la oportunidad de considerar los hechos y la prueba a la

---

[52] *Departamento del Trabajo y Recursos Humanos, supra* nota 35, en la pág. 13. Énfasis suplido.

luz del derecho vigente. Después de todo, la demanda de epígrafe se radicó bajo el procedimiento ordinario.

Así las cosas, basta con la discusión del primer y tercer asunto para revocar la determinación del TPI. Ello, puesto que nos encontramos ante una sentencia fundamentada en un derecho derogado e inaplicable a la controversia que se nos plantea.

**IV**

Por los fundamentos expuestos, se *revoca* la Sentencia Sumaria Parcial apelada y se devuelve el caso al foro primario para que atienda la controversia conforme al estado de derecho vigente y proceda con la continuación de los procesos cónsono con esta determinación.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones